**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000646
27-JUN-2014
08:55 AM**

NO. CAAP-11-0000646

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

MICHAEL D. WOODFALL, Plaintiff-Appellant,
v.
ERIC A. SEITZ, ATTORNEY AT LAW, A LAW CORPORATION;
ERIC A. SEITZ; LAWRENCE I. KAWASAKI, Defendants-Appellees.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-0506)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Reifurth and Ginoza, JJ.)

Plaintiff-Appellant Michael D. Woodfall (Woodfall), *pro se*, appeals from a Judgment for Defendants (Judgment) in favor of Defendants-Appellees Eric A. Seitz, Attorney at Law, a Law Corporation (Law Firm), Eric A. Seitz (Seitz), and Lawrence I. Kawasaki (Kawasaki) (collectively, the Defendants), entered on August 4, 2011, in the Circuit Court of the First Circuit (circuit court)[1]. The Judgment was entered based on the circuit court's order granting Defendants' motion for summary judgment. The circuit court had also denied Woodfall's motion for partial summary judgment, in which Woodfall had sought judgment as to liability.

In this case, Woodfall asserts causes of action for legal malpractice and breach of contract. He claims that he had an attorney-client relationship with the Defendants to file a

_____

[1] The Honorable Gary W.B. Chang presided.

lawsuit related to injuries he sustained while incarcerated (slip and fall case), but that Defendants failed to timely file the lawsuit and he is now barred by the statute of limitations.

On appeal, Woodfall raises the following points of error:

(1) the circuit court failed to apply proper summary judgment standards and thus erred in granting summary judgment while: (a) acknowledging there was a genuine issue of material fact as to the creation of an attorney-client relationship between Woodfall and the Defendants; (b) making a finding of "the undisputed existence of a substantial child support lien against [Woodfall];" (c) determining that the lien would have precluded recovery of any damages by Woodfall in the slip and fall case; and (d) thus determining that even if Defendants were retained and failed to file a timely lawsuit, Woodfall could not have recovered, was not injured by Defendants' alleged conduct, and therefore has no damages to establish a legal malpractice claim.

(2) the circuit court erred by failing to address Woodfall's breach of contract claim and

(3) the circuit court erred by allowing court hearings where only the Defendants participated, because Woodfall was incarcerated at the time.

Upon careful review of the record and the briefs submitted by the parties, having given due consideration to the arguments advanced and the issues raised, and having considered the applicable legal authority, we conclude that summary judgment for Defendants was not warranted. We vacate the Judgment and remand.

## I.    Standard of Review

We review the circuit court's grant of summary judgment *de novo*. Querubin v. Thronas, 107 Hawaiʻi 48, 56, 109 P.3d 689, 697 (2005).

The Hawaiʻi Supreme Court has stated:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

2

> any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
>
> A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. We review the evidence in the light most favorable to the party opposing the motion for summary judgment.
>
> The party moving for summary judgment bears the burden of proof to show the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Where, as here, the moving party is the defendant and does not bear the burden of proof at trial, he may prevail on a motion for summary judgment by demonstrating that the plaintiff fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Thomas v. Kidani, 126 Hawai'i 125, 129-30, 267 P.3d 1230, 1234-35 (2011) (citations and internal quotation marks omitted).

## II. Discussion

The elements for a legal malpractice cause of action are "(1) the parties had an attorney-client relationship, (2) the defendant committed a negligent act or omission constituting breach of that duty, (3) there is a causal connection between the breach and the plaintiff's injury, and (4) the plaintiff suffered actual loss or damages." Id. at 129, 267 P.3d at 1234.

The Defendants' motion for summary judgment was based on two grounds. First, Defendants asserted that there was no attorney-client relationship and thus there could not have been a breach of contract or legal malpractice. Second, Defendants asserted that Woodfall knew that the Defendants had declined to represent him in the slip and fall case, that he later retained the Defendants to represent him regarding claims that he was not getting proper medical treatment (medical care case), and that he waived any legal malpractice or professional misconduct claims when he entered the later agreement to retain the Defendants.

In rendering its summary judgment ruling, the circuit court did not rely on either of the grounds asserted by the Defendants. Instead, the circuit court noted that there may be genuine issues of material fact as to whether an attorney-client relationship had been created between Woodfall and Defendants,

3

but found that Woodfall had a substantial child support lien that would have precluded him from recovering any damages in the slip and fall case. The circuit court thus ruled that, even if an attorney-client relationship had existed, Woodfall could not establish any damages against the Defendants.[2] In essence, the circuit court ruled that Woodfall could not establish the fourth element of a legal malpractice claim. See Thomas, 126 Hawaiʻi at 129, 267 P.3d at 1234.

The circuit court erred in determining that a substantial child support lien existed against Woodfall. The record is sparse as to the child support lien and there is no admissible evidence establishing its existence or its size. The child support lien is referenced in Seitz's affidavit, but he only states that "[r]ecently we learned that Mr. Woodfall has a substantial lien for unpaid child support which would preclude him or us from collecting any judgment or settlement in the civil litigation we have been pursuing in his behalf for the past two years." There is nothing in Seitz's affidavit that establishes his personal knowledge related to the lien. See Hawaiʻi Rules of Civil Procedure (HRCP) Rule 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."). Moreover, even if we could consider Seitz's affidavit statement, it only indicates that the size of the lien would preclude recovery in the medical care case, not in the slip and fall case.

---

[2] The order granting summary judgment to Defendants states, in pertinent part:

> [A]lthough there may be genuine issues of fact as to the creation of an attorney-client relationship between Plaintiff and the Defendants, the undisputed existence of a substantial child support lien against the Plaintiff would have precluded his recovery of any damages in the underlying slip and fall tort case so that even if the Defendants were retained to and failed to file a timely lawsuit in Plaintiff's behalf Plaintiff could not have recovered and was not injured thereby and therefore has no damages that he can assert against Defendants.

4

The circuit court's ruling as to the child support lien is also in error because there is no evidence as to the amount of any child support lien and the record is unclear as to the amount that Woodfall likely would have been awarded if he prevailed in the slip and fall case. Thus, the record does not establish that a lien would have precluded an actual recovery by Woodfall.[3] As to the lien amount, even if we consider Seitz's affidavit, it does not indicate the amount of the lien. As to likely damages in the slip and fall case, a letter from Woodfall to Seitz, which is attached to Woodfall's declaration, indicates that Woodfall was claiming a back injury which he described as "intense burning sensation in [his] right hip/buttocks, across the right upper thigh, continuing down the right side of the right leg, to the right foot. There it changed to numbness, especially in the last two toes of the right foot." In his declaration, Woodfall claims that an MRI in April 2008 revealed he was suffering from a "severe pinched nerve in [his] low back." It is unclear how the circuit court determined that any child support lien would preclude recovery in the slip and fall case. Based on our *de novo* review of the record, we conclude there are genuine issues of material fact whether any child support lien would have exceeded any tort recovery in the slip and fall case.

"[T]he appellate court may affirm a lower court's decision on any ground in the record supporting affirmance, even if not cited by the lower court." Kiehm v. Adams, 109 Hawai'i 296, 301, 126 P.3d 339, 344 (2005). In their answering brief, Defendants continue to assert that Woodfall failed to establish that an attorney-client relationship had been created. In this regard, Defendants' main contention is that they had not agreed

---

[3] We do not reach the legal issue of whether the "actual loss or damages" element for a legal malpractice claim cannot be met, as a matter of law, where a child support lien is larger than any likely recovery in the underlying case. The parties did not brief this legal issue and the circuit court did not point to any legal authority supporting this conclusion. Our ruling is based on the record and that, even assuming a child support lien larger than any likely recovery would preclude a legal malpractice claim, the evidence in this case does not establish that there was a child support lien larger than any likely recovery.

to represent Woodfall.  However, we agree with the stated inclination of the circuit court that, based on the record in the case, there is a genuine issue of material fact whether an attorney-client relationship had been created.  See Stender v. Vincent, 92 Hawai'i 355, 363, 992 P.2d 50, 58 (2000) ("Whether and to what extent an attorney-client relationship is present is a question of fact.") (citing Dietz v. Doe, 935 P.2d 611, 615 (Wash. 1997)); DiCenzo v. Izawa, 68 Haw. 528, 536, 723 P.2d 171, 176 (1986) ("[M]eaningful inquiry into the existence of an attorney-client relationship . . .' turns largely on the client's subjective belief that it exists[.]'") (quoting In re McGlothen, 663 P.2d 1330, 1334 (Wash. 1983)); see also Bohn v. Cody, 832 P.2d 71, 75 (Wash. 1992) ("The client's subjective belief, however, does not control the issue unless it is reasonably formed based on the attending circumstances, including the attorney's words or actions."); In re Disciplinary Proceeding Against Egger, 98 P.3d 477, 485 (Wash. 2004).

The evidence in the record indicates that Kawasaki initially spoke with Woodfall by telephone and then met with him at Halawa Correction Center.  During their meeting, Kawasaki presented Woodfall with a retainer letter dated July 22, 2008, that had a signature line for Seitz, but which Seitz had not signed (retainer letter).  It is undisputed that Kawasaki asked Woodfall to sign the retainer letter and that Woodfall signed the retainer letter as well as medical releases.  In his affidavit, Kawasaki contends that he advised Woodfall that until Seitz signed the retainer letter and provided a copy to Woodfall, no attorney-client relationship existed.  The record indicates that Seitz never did sign the retainer letter.  However, in Woodfall's declaration, he states inter alia that Kawasaki told him during their meeting that he had "come prepared to do business," that Woodfall understood the retainer letter to be an offer for legal representation, that Kawasaki pointed out that Woodfall had agreed to provide all information or documents to them, and that Kawasaki had assured Woodfall that Kawasaki would file the case

before the statute of limitations deadline. Given the conflicting evidence in the record, we cannot say that there exists no genuine issue of material fact on the question of whether an attorney-client relationship was created.

Defendants also maintain on appeal that Woodfall waived any legal malpractice claims related to the slip and fall case when he later retained Defendants in the medical care case. It is undisputed that Woodfall and Seitz both signed a retainer letter agreement in June 2009 related to the medical care case (second retainer letter), which was entered into after Woodfall had already discovered that the Defendants had not filed the action in the slip and fall case. In his affidavit, Seitz states that he signed the second retainer letter after Woodfall assured him that "he did not intend to pursue any claims against [Seitz or his] law firm in connection with the 'slip and fall' matter[.]" Woodfall, to the contrary, states in his declaration that although he did accept the Defendants' offer to represent him in the medical care case, he did not waive any potential malpractice claims. The second retainer letter does not refer to any waiver of Woodfall's claims.

> A waiver may be expressed or implied, and it may be established by express statement or agreement, or by acts and conduct from which an intention to waive may be reasonably inferred.
>
> Generally, waiver is defined as an intentional relinquishment of a known right, a voluntary relinquishment of rights, and the relinquishment or refusal to use a right. To constitute a waiver, there must have existed a right claimed to have been waived and the waiving party must have had knowledge, actual or constructive, of the existence of such a right at the time of the purported waiver.

Coon v. City & Cnty. of Honolulu, 98 Hawai'i 233, 261, 47 P.3d 348, 376 (2002) (citations, internal quotation marks and brackets omitted).

The existence of a waiver is generally a question of fact, unless the facts are undisputed:

> While the question whether a valid waiver exists is generally a question of fact, "when the facts are undisputed it may become a question of law." *Hawaiian Homes Comm'n v. Bush*, 43 Haw. 281, 286 (1959) (citations omitted); *see also*

7

> *Stewart v. Spalding*, 23 Haw. 502, 517 (1916) ("The question
> of waiver is usually a mixed one of law and fact . . . , but
> where the facts are undisputed and are susceptible of but
> one reasonable inference it becomes one of law for the
> court." [ ]).

Id. at 261-62, 47 P.3d at 376-77.

Based on the state of the record, summary judgment on waiver grounds is not appropriate.

Given the conclusions above, we need not reach the other points of error raised by Woodfall challenging the summary judgment entered in favor of Defendants.

Moreover, as to Woodfall's contention that the circuit court erred in denying his motion for partial summary judgment, we disagree. The record establishes that Woodfall was not entitled to summary judgment, and the circuit court did not err in denying Woodfall's motion.

### III. Conclusion

For the reasons stated above, we affirm the Order Denying Plaintiff's Motion for Partial Summary Judgment filed on August 4, 2011; and we vacate the Judgment for Defendants and the Order Granting Defendants' Motion for Summary Judgment, both filed on August 4, 2011. The case is remanded to the circuit court for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, June 27, 2014.

On the briefs:

Michael D. Woodfall
Plaintiff-Appellant pro se

Eric A. Seitz
Della Au Belatti
Ronald N.W. Kim
for Defendants-Appellees

Presiding Judge

Associate Judge

Associate Judge

8